NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIGDALIA SALCEDO ROMANO, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PATERSON, NEW JERSEY <br><br> Defendant. | Civil Action No.: 17-12191 (CCC) <br><br> OPINION |

**CECCHI**, District Judge.

This matter comes before the Court by way of Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13-1). Pro se Plaintiff has submitted Opposition to Defendant's motion (ECF No. 15), to which Defendant has replied. (ECF No. 18). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

## I. BACKGROUND[1]

Plaintiff is an employee of the City of Paterson, New Jersey in the personnel department. (SAC at 2). Defendant is the City of Paterson. (SAC at 5). This action revolves around Defendant's discrimination on the basis of race, national origin, and ethnicity, creation of a hostile work environment, and retaliation of Plaintiff. (SAC at 2).

---

[1] This background is derived from Plaintiff's Second Amended Complaint (ECF No. 12 ("SAC")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Plaintiff started working as a receptionist for the City of Paterson in 2014. (Id.). Plaintiff was the only Hispanic employee in the personnel department during the relevant time period. (SAC at 8). Abby Levenson was hired as the head of the personnel department in 2015 while Plaintiff was working there as a receptionist. (SAC at 2). After Levenson was hired, Plaintiff was asked to complete many tasks that were outside the scope of her job title and were instead the responsibility of an employee in a clerk position. (SAC at 2-6). On June 13, 2016, Plaintiff applied for the position of personnel officer but she was rejected because, according to Plaintiff, "it was required that the applicant [held] the position of Clerk in order to be accepted for the position." (SAC at 7). After this application, Levenson offered Plaintiff the position of clerk. (Id.). Plaintiff refused the position. (Id.). At some point, Plaintiff also applied for the position of assistant personnel director and was denied. (Id.). Plaintiff does not define the qualifications for this position. In a meeting concerning Plaintiff's application for this position in April 2017, Levenson told Plaintiff that she did not qualify for the position because she did not have the necessary experience. (Id.).

During this same time period, there were other vacant positions within the personnel department, including the position of bilingual clerk, but Plaintiff was not offered these positions despite speaking both Spanish and English. (SAC at 8). Eugenia Byfield, an African-American woman, was hired as a bilingual clerk. (Id.). Plaintiff alleges that, although the bilingual clerk position required the ability to speak Spanish and English, Byfield did not speak Spanish. (Id.). As such, Plaintiff was often asked to translate for Byfield when a Spanish translator was needed. (Id.). Plaintiff also alleges that Byfield was given special treatment, including an "open schedule" that allowed Byfield to have flexible hours. (SAC at 8, 12). Marisol Santana, an Italian-American with Puerto Rican ancestry, was also hired as a bilingual clerk. (SAC at 9). Plaintiff alleges that

2

Santana did not speak Spanish fluently and would also frequently call on Plaintiff to translate between Spanish and English. (Id.).

Plaintiff further alleges that Levenson created a hostile work environment. There were times when Levenson allegedly looked at Plaintiff with negative facial expressions or gestures and "laugh[ed] behind her back whenever The Plaintiff sp[oke] because English is a second language." (SAC at 11). Levenson also allegedly made physical gestures when near Plaintiff, such as raising her hands and clenching her fists. (Id.).

Plaintiff lists additional events that contributed to the alleged hostile work environment. Between November and December 2015, Levenson openly discussed the details of Plaintiff's medical issues that Plaintiff told Levenson about privately with other employees. (SAC at 11, 12.). Additionally, Levenson allegedly criticized Plaintiff in a performance review in October 2016 when Levenson stated that the Plaintiff was sending a negative message by not participating in any office gatherings or parties. (SAC at 9, 10). Thereafter, Plaintiff informed the union president of this performance review and expressed her concern that this social information was inappropriate for a job performance evaluation. (SAC at 10). Furthermore, on December 14, 2017, Levenson allegedly moved towards Plaintiff "as if to run into her with her shoulder" when Plaintiff and Levenson were passing each other. (SAC at 11). Plaintiff reported this incident to her union representative. (Id.).

Plaintiff also alleges that there were some hostile workplace incidents involving Byfield. (SAC at 10-11). During one incident on September 2, 2016, Plaintiff walked past Byfield who was sitting at her desk talking to her sister during work hours. (SAC at 11). Plaintiff had her cell phone in her hand and Byfield told a supervisor, Linda Curry, that Plaintiff was recording Byfield's conversation. (Id.). Although Plaintiff denied that accusation, Ms. Curry told Plaintiff, "[j]ust

don't record anyone with your phone" while Byfield was not reprimanded for having her sister in the office during work hours. (Id.). Plaintiff felt as if her supervisors were taking sides. (Id.). Plaintiff filed a police report of harassment and intimidation with the Paterson Police Department detailing the incident with Byfield on September 11, 2016. (Id.).

On May 30, 2017, Plaintiff was involuntarily transferred to work in the same role in another department with a $500 pay increase. (SAC at 9). Two African-American employees replaced Plaintiff, who "upon information and belief, did not have the background required for their positions." (Id.). Plaintiff alleges that "[p]eople of different races and ethnicity from the Plaintiff were given more opportunities with less qualifications." (Id.).

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunities Commission ("EEOC") on September 27, 2017. (SAC at 12). Plaintiff received a Dismissal and Note of Rights (the "Right to Sue Notice") from the EEOC on September 28, 2017. (Id.). This action was originally filed by Plaintiff on November 22, 2017, in accordance with the ninety-day statutory period, asserting claims sounding in Title VII of discrimination, hostile work environment, and retaliation. (ECF No. 1). Plaintiff filed a Second Amendment Complaint on April 6, 2018. (ECF No. 12). Defendant now moves to dismiss Plaintiff's Second Amended Complaint as it relates to discrimination on the basis of race, national origin, and ethnicity, creation of a hostile work environment, and retaliation. (ECF No. 13-1 ("Def. Mov. Br.")).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A *pro se* complaint is to be liberally construed and must be held to less stringent standards than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. ANALYSIS

Defendant argues that Plaintiff fails to allege sufficient facts to form the basis of a Title VII claim or a claim under New Jersey's Law against Discrimination ("LAD"). (Def. Mov. Br. at 1). Specifically, Defendant asserts that Plaintiff's failure to state any factual averments that reveal a causal nexus between Plaintiff's membership in a protected class and the alleged conduct requires the dismissal of these claims. (Def. Mov. Br. at 17).

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his or her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The plaintiff has the initial burden of showing that she is a member of a protected class, was the subject of an adverse employment action, and that the circumstances give rise to an inference of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). The evidence set forth must be adequate to create an inference that an employment decision was based on illegally discriminatory criteria. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356 (3d Cir. 1999). To prove disparate treatment, an individual must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position; (3) that she suffered an adverse employment action; and (4) the adverse employment action was "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (citation omitted); *Abramson v. William Paterson College*, 260 F.3d 265, 282 (3d Cir. 2001) (explaining that the disparate treatment analysis under LAD "mirrors the Title VII inquiry").

From the Second Amended Complaint, the Court deduces that Plaintiff is challenging four employment actions: Defendant's (1) rejection of Plaintiff's personnel officer application; (2) rejection of Plaintiff's assistant personnel director application; (3) failure to offer Plaintiff vacant bilingual clerk positions; and (4) involuntary transfer of Plaintiff to another department in May 2017. Plaintiff is a Hispanic women employed by the City of Paterson as a receptionist. Therefore, Plaintiff falls under a protected class. However, all of these claims must fail because Plaintiff does not meet the other required elements for a *prima facie* claim of disparate treatment.

First, Plaintiff failed to allege sufficient facts to show that she was qualified for the two

positions she applied for and, therefore, does not meet the *prima facie* requirements for these employment actions. Plaintiff alleges that she was denied the job opportunities of personnel officer and assistant personnel director. However, Plaintiff was admittedly not qualified for the position of personnel officer because, as Plaintiff denotes, an applicant must hold the position of clerk to be accepted for a personnel officer position. Because Plaintiff was a receptionist at the time of her application, she was not qualified. Plaintiff was also denied the assistant personnel director position, but does not allege that she was qualified nor does she explain the qualifications for the position and merely states that Levenson told her she did not have the required experience. Therefore, Plaintiff does not meet the second element of the *prima facie* cause of action for discrimination concerning her two rejected job applications because Plaintiff did not plead sufficient facts to show that she was qualified for either positon.

Next, Plaintiff alleges that she was not offered the opportunity to fill vacant clerk positons despite being qualified. The third and fourth elements of the *prima facie* case require that Plaintiff establish that she was not hired for the position to which she applied and that an inference of unlawful discrimination can be discerned from the circumstances of the rejection. *Jones*, 198 F.3d at 410. Plaintiff does not plead facts sufficient to meet these elements. Levenson offered Plaintiff a clerk position in 2016 and Plaintiff rejected the offer. Although Plaintiff alleges that additional clerk positions became vacant during her time in the personnel department, Plaintiff does not allege that she ever applied for any clerk positions or expressed an interest to anyone in her department in filling one of the vacant clerk positions. In fact, Plaintiff only alleges that she denied an offer to fill a clerk position and discussed her unwillingness to accept a clerk position with Levenson sometime in 2016 and again on April 7, 2017. Therefore, Plaintiff did not plead facts sufficient to create any possible inference that Defendant's failure to offer her a clerk position was a result of

discrimination.

Lastly, Plaintiff alleges that her involuntary transfer to the same position in another department was discriminatory. To satisfy the third element of a *prima facie* disparate treatment claim, Plaintiff must show that she suffered an adverse employment action. *Id.* While transfers are not automatically exempt from classification as an adverse employment action, Plaintiff's interdepartmental transfer accompanied with a pay raise does not constitute an adverse employment action. Plaintiff does not allege that the transfer altered any employment rights, reduced her pay, eliminated her benefits, or changed her shift, hours, or job responsibilities. *See Seibert v. Lutron Electronics*, 408 F. App'x 605, 608 (3d Cir. 2010) (holding that plaintiff did not suffer an adverse employment action where transfer "was not met with a reduction in compensation, did not alter her employment rights, and did not affect her seniority level"). Therefore, Plaintiff has not pled sufficient facts to establish that Plaintiff suffered an adverse employment action and the claim must fail.

Plaintiff also asserts a claim of hostile work environment under Title VII and LAD. To succeed on a hostile work environment claim under Title VII, Plaintiff must establish that: (1) she suffered intentional discrimination because of her race, national origin, or ethnicity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for vicarious liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). The hostile work environment standard under LAD is "strikingly similar." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005); *see also Abramson*, 260 F.3d at 276-77 (listing identical elements for a hostile work environment claim under LAD and Title VII). Title VII does not create a "general civility code for the American

8

workplace." *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Accordingly, Title VII does not prohibit all verbal or physical harassment in the workplace but only prohibits discrimination that occurs because of Plaintiff's membership in a protected class. *Id.* Moreover, it does not protect against simple teasing, offhand comments, or minor isolated incidents. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Viewing the allegations in totality and in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has not pled sufficient facts to meet the first element—that Plaintiff suffered intentional discrimination because of her race, national origin, or ethnicity. Plaintiff outlines conduct that contributed to the alleged hostile work environment, including Levenson's negative facial expressions and gestures, a critical performance review, and invasions of privacy. While the allegation that Levenson laughed at Plaintiff's accent may be construed as discriminatory, Plaintiff provides no other facts to support her conclusory claim that Defendant's conduct was motivated by an improper discriminatory animus. Plaintiff never alleges that any comments were made about her accent, race, or national origin by Levenson, any other supervisors, or co-workers during her three years in the personnel department. Moreover, Plaintiff does not state facts to show that Levenson's negative expressions and gestures were in any way tied to Plaintiff's hertiage. Additionally, Plaintiff failed to allege that Levenson's conduct during the performance review was due to Plaintiff's membership in a protected class. The same is true regarding the invasion of privacy allegation. Plaintiff discussed alleged hostile conduct with the Paterson Police Department and union representatives on multiple occasions but never indicated to them that these problems were a result of discrimination nor told them any facts to suggest that this was the case. Plaintiff has not pled sufficient facts to establish that the alleged discrimination occurred because of Plaintiff's race, national origin, or ethnicity and, therefore, does not satisfy the *prima facie*

requirements of a hostile work environment claim.

The Court further gleans that Plaintiff may be asserting a retaliation claim under Title VII and LAD. To make a *prima facie* showing of retaliation, Plaintiff must establish that: (1) she participated in protected activity; (2) her employer took an adverse employment action after or contemporaneous with the protected activity; and (3) there is a causal link between the protected activity and the employer's adverse action. *See Kant v. Seton Hall Univ.*, 289 F. App'x. 564, 567 (3d Cir. 2008) (noting that these are the three elements that a plaintiff must satisfy "[t]o advance a *prima facie* case of retaliation under section 1981, Title VII, or the NJLAD") (citing *Abramson*, 260 F.3d at 286). Through this provision, Title VII protects those who participate in Title VII proceedings and those who formally or informally oppose discrimination made unlawful by Title VII. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006).

Plaintiff has failed to allege that she participated in any protected activity prior to an adverse employment action. Plaintiff engaged in protected activity when she filed a charge of discrimination with the EEOC on September 27, 2017. Prior to this filing, Plaintiff never complained to management, co-workers, or anyone employed by Defendant about discrimination based on race, national origin, or ethnicity in the workplace nor did she file any reports or complaints about this discrimination with another entity. The Second Amended Complaint is devoid of any allegation that a retaliatory employment action has taken place since September 2017. Accordingly, Plaintiff has failed to allege sufficient facts for the retaliation claim to survive Defendant's Motion to Dismiss.

## IV. **CONCLUSION**

For the aforementioned reasons, Defendant's Motion to Dismiss is granted. An appropriate order accompanies this Opinion.

DATED: March 29, 2019

_____
CLAIRE C. CECCHI
Judge, United States District Court